Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL KUMAR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MINDBODY, INC., RICHARD STOLLMEYER, KATHERINE BLAIR CHRISTIE, COURT CUNNINGHAM, GAIL GOODMAN, CIPORA HERMAN, ERIC LIAW, ADAM MILLER, and GRAHAM SMITH,<br><br>Defendants. | Case No. _____<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Sunil Kumar ("Plaintiff"), by his undersigned attorneys, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of MINDBODY, Inc. ("MINDBODY" or the "Company") against MINDBODY and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which MINDBODY will be acquired by affiliates of Vista Equity Partners through Torreys Parent, LLC ("Parent") and Parent's wholly owned subsidiary Torreys Merger Sub, Inc. ("Merger Sub" and together with Parent and the affiliates of Vista Equity Partners, "Vista") (the "Proposed Transaction").

2.      On December 24, 2018, MINDBODY issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell MINDBODY to Vista for $36.50 in cash for each share of MINDBODY common stock held (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.9 billion.

3.      On January 23, 2019, MINDBODY filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that MINDBODY stockholders vote in favor of the Proposed

Transaction, omits or misrepresents material information concerning, among other things: (i) MINDBODY insiders' potential conflicts of interest and the background process leading to the Proposed Transaction; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Qatalyst Partners LP ("Qatalyst"). The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") as MINDBODY stockholders need such information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over all claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

5.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff's claims arose in this District, where a substantial portion of the conduct took place, where most of the documents are electronically stored, and where the evidence exists. MINDBODY is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

7.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MINDBODY common stock.

8.    Defendant MINDBODY is a leading technology platform for the fitness, beauty and wellness services industries. The Company is a Delaware corporation and maintains its principal executive offices at 4051 Broad Street, Suite 220, San Luis Obispo, California 93401. MINDBODY's common stock is traded on the NASDAQ Global Market under the ticker symbol "MB."

9.    Defendant Richard Stollmeyer ("Stollmeyer") has been Chief Executive Officer ("CEO") of the Company and Chairman of the Board since 2004. Defendant Stollmeyer previously served as the Company's President from October 2004 to June 2017.

10.    Defendant Katherine Blair Christie ("Christie") has been a director of the Company since March 2015.

11.    Defendant Court Cunningham ("Cunningham") has been a director of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the Company since June 2017.

12.    Defendant Gail Goodman ("Goodman") has been a director of the Company since April 2016 and lead independent director of the Company since June 2017.

13.    Defendant Cipora Herman ("Herman") has been a director of the Company since February 2014.

14.    Defendant Eric Liaw ("Liaw") has been a director of the Company since 2017.

15.    Defendant Adam Miller ("Miller") has been a director of the Company since February 2017.

16.    Defendant Graham Smith ("Smith") has been a director of the Company since January 2015.

17.    Defendants Stollmeyer, Christie, Cunningham, Goodman, Herman, Liaw, Miller, and Smith are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.    Vista Equity Partners is a U.S.-based investment firm with more than $46 billion in cumulative capital commitments.  Vista Equity Partners exclusively invests in software, data, and technology-enabled organizations.

19.    Parent is a Delaware limited liability company formed by affiliates of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Vista Equity Partners.

20.   Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

21.   Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own MINDBODY common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.   Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.   The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are thousands of members in the Class.  As of January 18, 2019, there were 45,643,595 shares of Class A common stock and 2,372,938 shares of Class B common stock issued and outstanding.  All members of the Class may be identified from records maintained by MINDBODY or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**Company Background and Strong Financial Outlook**

28.    Since the Company was founded in 2001 as a hybrid desktop-web solution focused on yoga, Pilates and indoor cycling businesses, MINDBODY has grown into a leading provider of cloud-based business management software for the wellness service industry.

29.    For example, in 2005, the Company released MINDBODY Online, its software-as-a-service ("SaaS") platform to grow into adjacent fitness categories and increase the Company's total addressable market.  In 2009, the Company released MINDBODY Finder, enabling available classes and appointments to be aggregated for consumer search, and an open web services application programming interface ("API") that enabled other developers to build solutions on MINDBODY's platform. In 2013, the Company launched its MINDBODY Express mobile application for businesses and MINDBODY Connect application for consumers, which was redesigned in 2015.

30.    MINDBODY has continued to make significant investments in its platform to enable increased business penetration and consumer adoption of its two-sided marketplace.

31.    For example, on February 20, 2018, the Company announced the acquisition of FitMetrix, Inc. ("FitMetrix"), a performance tracking solutions company that has been a MINDBODY platform partner since 2015.  In the press

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

release announcing the acquisition, defendant Stollmeyer highlighted the benefits of acquiring FitMetrix, stating, "FitMetrix's powerful and intuitive tools help our customers drive results and retention while providing their clients with a fun and unique approach to fitness. . . . Interactive engagement is the future of fitness, and we see some of our most successful customers integrating performance tracking technology into their studios."

32.    Additionally, on April 2, 2018, MINDBODY announced it had completed the acquisition of Booker Software, a cloud-based business management platform for salons and space, for $150 million.  According to the press release, "[t]he acquisition of Booker adds approximately 10,000 salons and spas to the MINDBODY marketplace, combining MINDBODY's leadership in boutique fitness studios and its vast consumer network with Booker's leadership in high-value salons and spas."

33.    On November 6, 2018, MINDBODY announced its third quarter 2018 financial results.  For the quarter, total revenue was $63.8 million, a 37% increase compared to the third quarter of 2017.  Subscription and services revenue was $40.8 million, a 44% increase compared to the third quarter of 2017.  Brett White, the Company's Chief Operating Officer and Chief Financial Officer, commented on the quarter's financial results, stating:

In the third quarter we delivered the highest average monthly

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

subscription revenue for new subscribers in the history of both the MINDBODY and Booker platforms. . . . As the newly formed Beauty and Wellness team ramps, we expect to continue to grow our target market customer base, increase our platform partnerships and expand our consumer brand into 2019.

**The Proposed Transaction**

34.     Following entry into the Merger Agreement, on December 24, 2018, MINDBODY issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

SAN LUIS OBISPO, Calif., Dec. 24, 2018 (GLOBE NEWSWIRE) -- MINDBODY, Inc. (NASDAQ: MB) today announced that it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading investment firm focused on software, data and technology-enabled businesses.

Under the terms of the agreement, Vista will acquire all outstanding shares of MINDBODY common stock for a total value of approximately $1.9 billion. MINDBODY shareholders will receive $36.50 in cash per share, representing a 68% premium to the unaffected closing price as of December 21, 2018.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

"MINDBODY's purpose is to help people lead healthier, happier lives by connecting the world to fitness, beauty and wellness," said Rick Stollmeyer, Co-Founder and CEO of MINDBODY. "We are thrilled to provide immediate liquidity to our shareholders at a significant premium to market prices and to leverage Vista's resources and deep expertise to accelerate our growth while achieving that purpose more effectively than ever before."

"MINDBODY's position as the leading technology platform for the fitness, beauty and wellness industries makes it an ideal addition to the Vista family of companies," said Brian Sheth, Co-Founder and President of Vista. "We look forward to partnering with Rick and the entire MINDBODY team to deliver innovation to customers that will help grow their businesses and to consumers who depend on MINDBODY to strengthen their health and well-being."

MINDBODY's Board of Directors unanimously approved the deal and recommended that stockholders vote their shares in favor of the transaction. Closing of the transaction is subject to customary closing

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

conditions, including the approval of MINDBODY stockholders and antitrust approval in the United States. The transaction is expected to close in the first quarter of 2019 and is not subject to a financing condition.

**Insiders' Interests in the Proposed Transaction**

35.    MINDBODY and Vista insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of MINDBODY.

36.    Notably, it appears that defendant Stollmeyer has secured a position for himself with the combined company upon consummation of the Proposed Transaction.  In MINDBODY's December 31, 2018 Employee Letter, filed with the SEC on January 2, 2019, in response to the question "[a]re you planning to leave [MINDBODY]," defendant Stollmeyer stated: "No.  I am excited to continue serving [MINDBODY] and all of you for years to come."

37.    Further, MINDBODY insiders stand to reap substantial financial benefits for securing the deal with Vista.  According to the Merger Agreement, all vested and unvested Company RSUs and options will be converted into the right to receive cash payments.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

38.    Moreover, if they are terminated in connection with the Proposed Transaction, MINDBODY's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| Richard Stollmeyer | $880,671 | $40,981,156 | $ 22,786 | $41,884,613 |
| Michael Mansbach | $425,000 | $ 5,313,897 | $ 17,740 | $ 5,756,637 |
| Brett White | $641,250 | $11,043,053 | $ 122,882 | $11,807,185 |
| Mark Baker | $171,200 | $ 2,633,222 | $ 7,595 | $ 2,812,017 |
| Kimberly Lytikainen | $138,502 | $ 2,241,416 | $ 0 | $ 2,379,918 |

## The Proxy Statement Contains Material Misstatements or Omissions

39.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to MINDBODY's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

40.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) MINDBODY insiders' potential conflicts of interest and the background process leading to the Proposed Transaction; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Qatalyst.  Accordingly, MINDBODY stockholders are being asked to make a decision whether to vote in favor of the Proposed Transaction or

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

seek appraisal without all material information at their disposal.

***Material Omissions Concerning MINDBODY Insiders' Potential Conflicts of Interest***

41.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's directors and executive officers, including in connection with the sale process leading up to the Proposed Transaction.

42.     The Proxy Statement sets forth:

On November 1, 2018, representatives of Cooley provided the Transaction Committee with a general written framework for management neutrality with respect to potential strategic transaction participants, which included avoidance of any discussions or activities that would indicate favoring one participant over another or would indicate a preference between MINDBODY engaging in a strategic transaction or continuing as a stand-alone entity. Each member of MINDBODY senior management acknowledged and confirmed the management neutrality guidelines.

Proxy Statement at 27.

43.     However, the Proxy Statement fails to disclose the details of any employment-related discussions and negotiations that occurred between Vista and MINDBODY executive officers prior to November 1, 2018, including who

14

participated in all such communications, when they occurred, and their content, as well as whether any of Vista's proposals or indications of interest mentioned management retention.   Notably, according to the Proxy Statement defendant Stollmeyer met with representatives of Vista in October 2018, prior to any discussions regarding management neutrality.   Indeed, it appears defendant Stollmeyer has secured employment with the post-merger company.   In MINDBODY's December 31, 2018 Employee Letter, filed with the SEC on January 2, 2019, in response to the question "[a]re you planning to leave [MINDBODY]," defendant Stollmeyer stated: "No.  I am excited to continue serving [MINDBODY] and all of you for years to come."

44.    With respect to defendant Stollmeyer's October 2018 meeting with representatives of Vista, the Proxy Statement further fails to disclose whether defendant Stollmeyer or Vista initiated the October 2018 meeting, the exact date of the meeting, what the parties discussed at the meeting and whether the Board authorized the meeting.  The Proxy Statement similarly fails to disclose whether defendant Stollmeyer's October 2018 introductory meetings with representatives of two other financial sponsors referred to in the Proxy Statement as "Party A" and "Party B" were authorized by the Board.

45.    In addition, the Proxy Statement fails to disclose the date of the earliest discussions that occurred between representatives of the Company and Vista

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

regarding a potential sale transaction, who participated in the discussions and the details of the discussions.  The Proxy Statement further fails to disclose the dates and details of any discussions between representatives of Vista and the Company from October 2018 to November 19, 2018.

46.   Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47.   Additionally, the Proxy Statement fails to disclose the details of the "conflict disclosure by Qatalyst Partners" as discussed by the Transaction Committee at its November 14, 2018 meeting.  *Id.*  Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48.   The omission of this information renders the statements in the "Background of the Merger" and "Interests of MINDBODY's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

***Material Omissions Concerning Qatalyst's Financial Analyses***

49.    The Proxy Statement describes Qatalyst's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Qatalyst's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, MINDBODY's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Qatalyst's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to MINDBODY's stockholders.

50.    With respect to Qatalyst's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs underlying the discount rate range of 9.0% to 11.0%; (ii) the basis for applying enterprise value to next-twelve-months estimated unlevered free cash flow multiples ranging from 20.0x to 30.0x to derive the Company's terminal value; (iii) the value of MINDBODY's cash net of the face value of outstanding debt and financing obligations, as of December 31, 2018, utilized in the analysis; and (iv) the implied perpetuity growth rates resulting from the analyses.

51.    With respect to Qatalyst's *Selected Companies Analysis* and *Selected*

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*Transactions Analysis*, the Proxy Statement fails to disclose the Analyst Projections utilized by Qatalyst in the analyses.

52.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53.    The omission of this information renders the statements in the "Opinion of Qatalyst Partners LP" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

54.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

55.    Plaintiff repeats and realleges the preceding allegations as if fully set

forth herein.

56.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

57.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

58.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the defendants.  The Proxy Statement misrepresented and/or omitted material facts, including material information about potential conflicts of interest faced by Company insiders, the background process leading up to the Proposed Transaction and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Qatalyst.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

60.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

61.    Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## <u>COUNT II</u>

**Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

62.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of MINDBODY within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of MINDBODY and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

64.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

66.    In addition, as the Proxy Statement sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered — descriptions which had input from the Individual Defendants.

67.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief in his favor on behalf of MINDBODY, and against the defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to MINDBODY;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: February 4, 2019            **WEISSLAW LLP**

By: _____
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
            -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff and the Proposed Class*

**OF COUNSEL:**

23

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

**BRAGAR EAGEL & SQUIRE, P.C.**

2

Melissa A. Fortunato
3    885 Third Avenue, Suite 3040
New York, New York 10022
4    Tel: (212) 308-5858
Fax: (212) 486-0462
5    Email: fortunato@bespc.com

6    *Attorneys for Plaintiff and the Proposed Class*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS